IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN J. MATSKO, III and<br>TERESA A. MATSKO,<br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES OF AMERICA and<br>RUDY KOTOR,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action 05-264 J<br>)<br>)<br>) |

## MEMORANDUM OPINION

CONTI, District Judge.

  Pending before this court is a motion for summary judgment filed by defendant, United States of America (the "United States" or "government"). Plaintiffs John J. Matsko III ("Matsko" or "plaintiff") and Teresa A. Matsko ("T.M.") (collectively, "plaintiffs") commenced a civil action against the government and Rudy Kotor ("defendant Kotor") pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et. seq. ("FTCA"), alleging that defendant Kotor injured plaintiff during the course of defendant Kotor's employment as a mine inspector for the Mine Safety Health Administration ("MSHA") of the Department of Labor, an agency of the United States.

  In this case, plaintiff asserted claims against the United States under the FTCA on two different theories. Plaintiff asserted a claim against the United States for the actions of defendant Kotor as Kotor's employer and also asserted a claim against the United States for failing to protect him from injury, despite a duty owed to him as a business invitee. Matsko v. United States, 372 F.3d 556, 557 (3d Cir. 2004). Previously, the government filed a motion to dismiss

all the claims asserted in plaintiffs' amended complaint including the two claims asserted by Matsko and T.M.'s claim for loss of consortium arguing that this court lacks subject-matter jurisdiction over both defendants. The court granted the government's motion to dismiss. Matsko appealed to the United States Court of Appeals for the Third Circuit.[1]

The court of appeals affirmed in part and reversed in part. With respect to Matsko's first claim that Kotor's actions are imputed to his employer, the United States, the court of appeals agreed with this court that the United States retains immunity for intentional assaults by government workers who are acting outside the scope of their employment and affirmed the dismissal of plaintiff's claim against the United States as Kotor's employer. (Id.) The court of appeals held that defendant Kotor was not acting within the scope of his employment when he assaulted plaintiff, and therefore the claim was precluded under the FTCA. (Id.) With respect to plaintiff's second claim, the court of appeals reversed this court's ruling dismissing Matsko's negligence claim as a business invitee against the United States. (Id.) The court of appeals held that claim should stand and be "resolved on the merits, rather than in a jurisdictional challenge." (Id. at 561.) The court of appeals, held that insofar as Matsko claims that the United States is liable for the negligence of defendant Kotor's supervisors and co-workers, then the lawsuit should not have been dismissed.

The court of appeals remanded the case for further proceedings consistent with its opinion. (Id.) Following several months of discovery, the government filed the present motion

---

[1] It appears that the dismissal of T.M.'s claim was not appealed and in any event the court of appeals affirmed the district court in all respects except with respect to Matsko's negligence claim. T.M.'s claim will not be further addressed.

for summary judgment. By reason of the existence of a genuine issue of material fact, this court will deny the government's motion for summary judgment.

*Factual Background*

The parties essentially agree on the following facts. On June 1, 2000, plaintiff had a meeting with Earl Miller ("Miller"), a representative of MSHA, at MSHA's offices in Johnstown, Pennsylvania. (Joint Statement of Material Facts ("J.S."), Doc. No. 38 ¶¶ 43-44.) Miller borrowed defendant Kotor's chair for plaintiff to sit in during the meeting. (Id. ¶53.) At some point during the meeting, defendant Kotor entered the office and commented that plaintiff was in his chair. (Id. ¶ 84.) Plaintiff began to push himself up out of the chair, when defendant Kotor, without provocation, approached plaintiff from behind, grabbed plaintiff by the back of the neck, pushed him out of the chair, and slammed his neck and head forcefully down on a briefcase. (Id.) Defendant Kotor's actions resulted in injuries to plaintiff including a broken vertebra and a herniated disk in plaintiff's neck. (Doc. No. 25, Ex. B (Statement of John J. Matsko III).)

The parties do not agree, however, on the facts and circumstances surrounding and leading up to the incident on June 1, 2000. Plaintiffs contend that the government knew or should have known of the violent and abusive tendencies of defendant Kotor and failed on June 1, 2000, to take adequate steps to protect plaintiff from the risk of harm or otherwise prevent injury to plaintiff. In support of his claim, plaintiff adduced the following evidence to show that MSHA employees knew or should have known of defendant Kotor's behavior.

3

**Testimony of Vincent Jardina**

Vincent Jardina was a mine inspector with MSHA in Johnstown, Pennsylvania from 1978 through 1996. (Deposition of Vincent Jardina ("Jardina Dep.") at 11.) Mr. Jardina worked with defendant Kotor from 1983 through 1996. (Id. at 19.) Mr. Jardina described defendant Kotor's demeanor as "very scary", and "[v]ery hostile and angry, attitude-wise." (Id. at 18-19.) On one occasion in 1986, Mr. Jardinia was conducting an inspection with defendant Kotor when a safety director questioned defendant Kotor about his experience as an inspector. (Id. at 20.) Defendant Kotor abruptly got up from the table with a clinched fist. (Id.) Defendant Kotor turned very red in the face and clenched both of his fists very tightly. (Id.) Mr. Jardina grabbed defendant Kotor by the arm and escorted him outside, because he was concerned that defendant Kotor may physically accost the mine employee. (Id. at 21.) After returning to the field office, Mr. Jardina reported the incident to the two supervisors in charge, Theodore Glesko and Walter Koba. "Mr. Koba said, I think you're over exaggerating. Mr. Glesko just smiled, laughed and walked away." (Id. at 22.)

Mr. Jardina testified about an incident when defendant Kotor came into the locker room at the field office and punched a locker. (Id. at 24-25.) Mr. Jardina stated that a lot of inspectors and he would avoid defendant Kotor, "because you don't know how he would react." (Id. at 26.) "He just seemed like a guy – just like a gun's ready to go off." (Id.) Mr. Jardina described defendant Kotor's behavior in staff meetings as "[v]ery volatile . . . he would come down, slam his fists down on the desk and everybody heard it hit the table . . . . And everybody would look like, well, what's with him today." (Id.) On one occasion defendant Kotor kept punching Mr.

4

Jardina in the arm during a meeting, and Mr. Jardina has observed defendant Kotor poking others with pencils on several occasions. (Id. at 27.)

Mr. Jardina told of another incident in the presence of two other inspectors when defendant Kotor grabbed Mr. Jardina from behind as he got out of the shower and put him in a headlock and a choke hold. (Id. at 28.) After Mr. Jardina finally struggled free and confronted defendant Kotor, defendant Kotor responded, "[W]hat's the matter, cuz? Can't you handle the pressure?" (Id. at 29.) Another inspector who had witnessed the incident asked defendant Kotor "Rudy, what the hell's the matter with you? What are you doing" and defendant Kotor "just laughed and walked back out of the shower." (Id. at 29.) Mr. Jardina reported this incident as well as defendant Kotor's disposition in the field, angry moods and mood swings to supervisors Mr. Koba and Mr. Glesko. (Id. at 30.) When Mr. Jardina did not receive an adequate response from Mr. Koba, he reported these episodes to the District II manager Joseph Garcia. (Id.)

Mr. Jardina told of an incident with defendant Kotor in 2000, which was witnessed by several MSHA inspectors.[2] (Id. at 35.) Mr. Jardina and defendant Kotor were leaving the Ruff Creek field office for lunch when defendant Kotor asked Mr. Jardina if he would like to share a hotel room with him rather than drive all the way back to Johnstown. (Id. at 35-36.) Mr. Jardina declined and told him he would rather drive home to his wife and kids. (Id.) Defendant Kotor then threw his briefcase down on the ground and said in a "very loud," "very hostile" voice, "well, F*** you, too . . .if that's the way you feel, be that way." (Id. at 36.)

---

[2]Mr. Jardina left MSHA in 1996, but returned in 1998, and was working in Ruff Creek , and not the Johnstown office. (Jardina Dep. at 12.) Defendant Kotor and Mr. Jardina were working on a project together at Ruff Creek at the time of this incident. (Id. at 35.)

Finally, Mr. Jardina testified to numerous acts of bullying and intimidation by defendant Kotor of fellow inspectors as well as mine workers. Defendant Kotor would push and shove other inspectors when he passed them in the hall. (Id. at 100.) On several occasions defendant Kotor yelled at co-workers in a loud threatening tone to "Get out of my damn seat! That's my desk!" (Id. at 102.) On one occasion in front of several inspectors, defendant Kotor approached a fellow inspector and said, "[Y]ou know, I'm in the mood to kick your ass," and the other inspector walked away. (Id. at 46.)

**Testimony of John Matsko**

Matsko had heard from Earl Miller "that [Matsko] should watch out for Rudy. He had a reputation for being a loose cannon. Earl said - don't piss him off - he's different." (Doc. 25 Ex. B, at. 2 (Statement of John J. Matsko III "Matsko statement").) Matsko had heard that defendant Kotor was volatile and there had been instances where he had been confrontational with mine managers, foremen and safety people.[3] (Id.) Matsko testified to numerous statements made by people in the mining industry about defendant Kotor's reputation as someone who gets very angry, loses control, blows up, and can't control his emotions. (Deposition of John J. Matsko III ("Matsko Dep.") at 50-52, 68, 70-71, 81, 83, 126.)

---

[3]The government has objected to statements made by third parties to Matsko, concerning defendant Kotor's violent disposition and volatile reputation, as inadmissable hearsay. Their argument lacks merit. Statements made by mine inspectors, supervisors and other MSHA officials at a similar level, are admissable non-hearsay statements as admissions by a party opponent under Federal Rule of Evidence 801(d)(2)(D). Statements made by persons in the mining industry and not employed by MSHA would be inadmissable hearsay if offered to prove the truth of the matter asserted, i.e. defendant Kotor's propensity for violence. Those statements, however, arguably would be admissable for the limited purpose of proving whether or not MSHA knew or should have known of defendant Kotor's reputation or propensity for violence. See FED. R. EVID. 801(c).

After the incident on June 1, 2000, Matsko walked into the hallway and Ron Costlow, an employee of MSHA, said, "I told you don't piss Rudy off." (Id. at 67). James Biesinger, a MSHA supervisor, said nothing and gave Matsko a sly grin. (Id. at 68.)

The government contends that defendant Kotor's violent behavior on June 1, 2000 was isolated, sudden and unforeseeable, and that they could not have prevented the incident. The government offered the testimony of MSHA supervisor James Biesinger, former MSHA inspector Earl Miller, MSHA training specialist Donald Conrad, and MSHA inspectors Morgart, Fetsko, and Huntley. All the government witnesses testified that they had never seen defendant Kotor get angry, blow up, lose control, yell at anyone or hit anyone before June 1, 2000. (Doc. No. 38 ¶¶ 67-136.)

### Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. (Id. at 249.)

**Discussion**

A. <u>Sovereign Immunity and the FTCA</u>

The United States, as sovereign, is immune from suit unless it consents to be sued through a waiver. <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983); <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941). Any waiver of sovereign immunity is to be strictly construed in favor of the sovereign and must be "unequivocally expressed" in the statutory text. <u>Department of the Army v. Blue Fox, Inc.</u>, 525 U.S. 255, 261 (1999). Congress has waived sovereign immunity on a variety of issues through the enactment of statutes like the FTCA. (<u>Id.</u> at 260.)

The FTCA provides that, subject to certain exceptions, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. More specifically, the FTCA further provides that the United States is liable for "personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." <u>Id.</u> § 2679(b)(1). The FTCA does not apply to various exceptions including "an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation" or any claims involving assault, battery and the like unless the conduct was by an investigative or law enforcement officer of the United States. <u>Id.</u> § 2680(a),(h).

### B. Elements of the negligence claim at issue

The court of appeals was instructive in describing the claim against the government. Specifically, the court found that the United States could be liable if plaintiff proves that defendant Kotor's supervisors and co-workers were negligent. Matsko, 372 F.3d at 557. Because the incident occurred in Pennsylvania, this negligence action is subject to Pennsylvania law. Id. at 561 n.10 (citing 28 U.S.C. § 1346(b)(1)). To establish a negligence claim under Pennsylvania law, a plaintiff must demonstrate: (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, (3) the breach resulted in injury to the plaintiff, and (4) the plaintiff suffered damage. Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998). Each of the elements will be addressed.

### (1) Duty

As a landowner, the government undertook a duty to protect Matzko when it invited him to a meeting at the MSHA offices. Id. at 561. The scope of that duty has been described by Pennsylvania courts which have adopted the RESTATEMENT (SECOND) OF TORTS § 344. Id. Section 344 makes a possessor of land liable to business invitees to his property for "physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons." Id. (quoting Moran v. Valley Forge Drive-In Theater, Inc., 246 A.2d 875, 878 (Pa. 1968)). The possessor of land can only be held liable "if the possessor by the exercise of reasonable care could have (a) discovered that such acts were being done or were about to be done, and (b) protected the members of the public by (i) controlling the conduct of the third persons, or (ii) giving a warning adequate to enable them to avoid the harm." Moran, 246 A.2d at 878. It is not necessary for the possessor of land to know the exact time or location where patrons may be

injured, but it is sufficient to establish a jury question of liability if the evidence shows the possessor had actual or constructive knowledge of prior acts committed by third parties which might cause injuries.  Id. at 878-79.

In the present case, in order to prove his case, plaintiff must first show that defendant, through its MSHA employees, knew or should have known of the violent or abusive behavior of defendant Kotor.  Therefore, to survive summary judgment, plaintiff must present sufficient evidence that a reasonable jury could conclude that defendant Kotor's supervisors or co-workers knew or should have known of the violent or abusive behavior of defendant Kotor.

Reviewing all the evidence of record and drawing all reasonable inferences in favor of plaintiffs, this court concludes that if the testimony of Vincent Jardina and Matsko is credited by a jury, the jury could find that MSHA knew or should have known of defendant Kotor's propensity for violent outbursts and temper, and therefore owed Matzko a duty to protect him from or warn him of the danger.

**(2) Breach**

Having found that a genuine issue of material fact exists with respect to whether the government owed a duty to plaintiff, the court must consider whether the government took adequate steps to protect Matsko by controlling defendant Kotor's behavior or by giving adequate warning to enable Matsko to avoid the harm.  The question whether the government took adequate steps to protect the public, i.e, here Matsko, or warn them is a question of fact to be decided by the jury.  Id. at 878.

In this case, the evidence of record is such that if the testimony of Vincent Jardina and Matsko is credited, a reasonable jury could conclude that the government failed to take adequate

steps to protect Matsko. Assuming the government knew or should have known of defendant Kotor's temper or violent outbursts, there is no evidence that the government took any steps to discipline defendant Kotor or otherwise limit his contact with the public. There is also no evidence that the government took any steps to warn the public of any danger posed by defendant Kotor. Finally, plaintiff contends that the government could have stopped defendant Kotor before he assaulted plaintiff by either verbally or physically intervening after defendant Kotor yelled at plaintiff, "You're in my f-ing chair!." (Matsko Dep. at 128-29.) The government contends that the government's employer could not have stopped defendant Kotor. (Doc. No. 20 at 16-20.) Under these circumstances, the question whether a breach of duty occurred will need to be determined by the jury.

### (3) Causation

Under Pennsylvania law, an act or failure to act is said to be a legal cause if it is a substantial factor in bringing about the injury. Jones v. Montefiore Hospital 431 A.2d 920, 923 (Pa. 1981). To be a substantial factor, it need not be the sole factor and need not be quantified as considerable or large, so long as it is significant or recognizable. Jeter v. Owens-Corning Fiberglass Corp., 716 A.2d 633, 636-37 (Pa.Super. Ct. 1998). "[T]he fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence." Majors v. Brodhead Hotel, 205 A.2d at 878 (Pa. 1965).

In this case there is no doubt that the actions of defendant Kotor were a cause of the plaintiff's injuries. The government, however, is not relieved of liability if its negligence is also found to be a substantial factor in causing plaintiff's injuries. The question of causation in this

case is inextricably intertwined with the question of liability.  If a jury could find that the government was put on notice about defendant Kotor's violent behavior, and failed to take adequate precautions to protect business invitees from the danger, the jury could also conclude that the government's failure was a substantial factor in bringing about plaintiff's injuries.  This inquiry will require a determination about the adequacy of the government's response to the information it had about defendant Kotor, and whether sufficient precautions on the part of the government could have prevented the incident.  Evidence of causation presented by both parties could support either conclusion and this matter will need to be resolved by the jury.

### (4) Damage

The evidence of record regarding plaintiff's suffering actual damages is not disputed.  Specifically, it is not disputed that plaintiff suffered a broken vertebra and a herniated disk in his neck as a direct result of the incident on June 1, 2000.  (Doc. No. 25 Ex. B.)

### Conclusion

Plaintiff adduced sufficient evidence with regard to each element of his negligence claim against the United States that would support a reasonable jury rendering a verdict in favor of the plaintiff.  By reason of the existence of genuine issues of material fact, summary judgment cannot be granted in favor of defendant.

For the reasons set forth above, defendant United States' motion for summary judgment (Doc. No. 19) is **DENIED**.

                                                                                                                        By the court,

                                                                                                                        /s/ JOY FLOWERS CONTI
                                                                                                                        Joy Flowers Conti
                                                                                                                        United States District Judge

Dated: September 18, 2007

cc: counsel of record.